IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**WARREN S. PETRENA,**

    **Plaintiff,**

vs.                                                                    CASE NO. 1:04CV441-MMP/AK

**CARSON MCCALL, et al,**

    **Defendants.**

    _____/

## REPORT AND RECOMMENDATION

Plaintiff brings this cause of action pursuant to 42 U.S.C. §1983 alleging deliberate indifference to his health and safety needs, as well as other claims. (Doc. 1). Defendants have moved for summary judgment on the grounds that Plaintiff has failed to state a claim for relief. (Doc. 19). Plaintiff has responded. (Doc. 27).

**I.**    **Allegations of the Complaint (Doc. 1)**

Plaintiff alleges that Defendant Sheriff McCall violated his constitutional rights with regard to his arrest such as making slanderous statements about him selling or using methamphetamine, refusing him phone calls to his family, and later failing to move him at the jail after being advised that another inmate, Hal Lewis, was going to be

"a problem." Plaintiff alleges that Defendant McCall ignored him, and two months later his neck was hurt in a fight with Lewis. Plaintiff claims that Defendant Wanda Wallace mis-diagnosed his neck problem, which turned out to be a herniated disk requiring surgery. Instead, Plaintiff claims that Wallace placed him in a one man cell as punishment for complaining of pain. Plaintiff claims that another corrections officer, Paul Anderson, told him that Defendant Debra Hamilton refused to move him. He also claims that he was told he would be scheduled for surgery on his neck, but Defendant Wallace refused to schedule his appointment, and he never received surgery while at the jail. He claims that he waited 5 months and was in a great deal of pain and did not get any relief until he was in prison.

## II.   Standard of Review

A district court should grant summary judgment when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case." Nolen v. Boca Raton Community Hospital, Inc., 373 F.3d 1151, 1154 (11th Cr. 2004), *citing* Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986). All issues of material fact should be resolved in favor of the Plaintiff or non-moving party before the Court determines the legal question of whether the defendant is entitled to judgment as a matter of law under that version of the facts. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003); Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002). The Plaintiff has the burden to come forward with evidentiary material demonstrating a genuine issue of fact for trial. Celotex, 477 U.S. at 322-23. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material

**No. 1:04cv441-mmp/ak**

facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient. There must be such evidence that a jury could reasonably return a verdict for the party bearing the burden of proof. Anderson v. Liberty Lobby, 477 U.S. 242, 251, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). "For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Board of Education, 93 F.3d 739, 742 (11th Cir. 1996).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)). The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c). Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

While a moving party is not required to support his motion for summary judgment with affidavits, Celotex, supra at 323, the facts stated in uncontradicted affidavits or other evidentiary materials must be accepted as true for purposes of summary judgment. Gauck v. Meleski, 346 F.2d 433, 436 (5th Cir. 1965).

### III. Defendants' Rule 56(e) evidence

    a)    <u>Affidavit of Defendant Sheriff McCall</u>

**No. 1:04cv441-mmp/ak**

Sheriff McCall attests that he is sheriff of Lafayette County, Florida, and received information about a drug deal involving Plaintiff. He personally participated in the arrest and undercover drug purchase involving Plaintiff, after which Plaintiff agreed to arrange a drug buy and name other drug dealers. Sheriff McCall brought him to the Dixie County Jail, prior to the undercover drug buy, and told them not to let Plaintiff make any phone calls since he was worried that Plaintiff might alert the drug dealers to the undercover buy and put the agent involved at great risk. When the drug buy did not happen, Plaintiff was returned to the Lafayette County Jail. Sheriff McCall attests that he had no reason to know that Inmate Lewis and Plaintiff would be involved in an altercation because Plaintiff never told him about any potential problems nor did he ever ask to be moved away from Inmate Lewis.

  b) <u>Affidavit of Defendant Debra Hamilton</u>

Defendant Hamilton attests that she is a correctional officer at Lafayette County Jail and remembers both Plaintiff and Inmate Hal Lewis, but does not recall ever being advised that there was a problem between the two of them. She attests that she was never asked to keep them apart nor did she ever tell CO Paul Anderson that she was not going to move anyone just because they could not get along.

  c) <u>Affidavit of Defendant Wanda Wallace</u>

Defendant Wallace is a registered nurse employed at the Lafayette County Jail. She recalled an altercation between Plaintiff and another inmate and that he refused medical services at the time of the incident. She recalls that Plaintiff had a black eye and a ½ inch cut between the eyebrow and eyelid after the fight. She examined Plaintiff

**No. 1:04cv441-mmp/ak**

on February 10, 2003, two days after the fight and Plaintiff did not complain about his shoulder. The medical records attached show that Plaintiff had been treated by medical on February 8, 2003, for acid reflux, and then on February 10, 2003, he was noted to have a black eye and a cut which had already started healing. He mentioned that he got the injury fighting with Hal Lewis. There is no mention of this inmate in any of the treatment notes in the days preceding this entry. Since the cut was already healing it was decided not to suture it. Although there are numerous treatment notes after this time, the first note addressing his complaints of shoulder pain is April 29, 2003. On June 10, 2003, Plaintiff told Wallace that he thinks the original injury occurred "when he had that fight." An MRI was obtained on July 24, 2003, which showed "a fairly large herniated disc lower cervical spine." Defendant Wallace attests that she tried to make an appointment for Plaintiff to be evaluated by Dr. Kennedy in Lake City, Florida, from August 8, 2003, to August 14, 2003, but Dr. Kennedy's office was not cooperative, and on August 14, 2003, she scheduled him with Dr. Gregg Alexander, whose earliest appointment was September 11, 2003. She tried to get an earlier appointment on August 19, 2003, but was not able to obtain one. Plaintiff was seen by Dr. Alexander on September 11, 2003, and another MRI and x-ray were ordered and done on September 22, 2003, showing a herniated disc at C6-C7, and a follow up appointment was made for October 2, 2003. Because Plaintiff complained of pain, Defendant Wallace obtained an earlier appointment on September 29, 2003, and surgery was scheduled for October 16, 2003, but Plaintiff had criminal proceedings scheduled for that week. Defendant Wallace attests that his ongoing trial prevented her from scheduling his surgery, but she

**No. 1:04cv441-mmp/ak**

could not tell him what dates were involved because it is policy not to advise inmates of transfer dates and times because of the security risk.  On October 23, 2003, Plaintiff declared a medical emergency and refused meals and medication.  Defendant Wallace had him moved to a one man cell because she was concerned that he would have withdrawal difficulties from his abrupt cessation of the narcotic medication he had been on for pain, and she wanted him in a cell with 24 hour observation.  During this time she scheduled his pre-operative consultation with Dr. Alexander on November 10, 2003, where his surgery would be scheduled.  However, he was transferred to the custody of the Department of Corrections on November 6, 2003.

      d)     <u>Affidavit of Paul Anderson</u>

Officer Anderson was employed at the Lafayette County Jail during the time Plaintiff was incarcerated there and recalls transporting Plaintiff to Tallahassee for treatment regarding his back pain.  Anderson attests that he never told Plaintiff that Debra Hamilton said she would not move him.  Attached to Anderson's affidavit is the incident report and probable cause affidavit detailing the altercation between Plaintiff and Lewis, which shows that Plaintiff was noted to be bleeding from a cut above his eye and scratches on his arm, but both inmates refused treatment.  There is no indication in either paper that there had been prior problems between the two inmates and Lewis was transported to the Suwannee County Jail after the incident.

**IV.**    **Plaintiff's Rule 56(e) evidence**

      a)     <u>Affidavit of Plaintiff Warren Petrena</u>

**No. 1:04cv441-mmp/ak**

Plaintiff claims that he never sold methamphetamine in Lafayette County or Mayo, Florida, and that Sheriff McCall slandered him by saying he did. Plaintiff also said Sheriff McCall would not call his family for him and they were worried about him. He claims that he was not allowed to use the phone for over a week. In December 2002, Plaintiff claims that he told Sheriff McCall to move him from cell #34 or he and Hal Lewis were going to fight. Allegedly McCall asked him not to fight Lewis, but did not move him. In January 2003, Plaintiff claims that he again spoke to McCall and asked that Hal be moved or there would be trouble. He claims that McCall ignored him. On February 8, 2003, Plaintiff claims that Lewis hit him with a clinched fist lacerating his eye and herniating a disk in his neck. EMT personnel treated him with a band-aid, but he did not refuse treatment. He claims that he heard his neck pop when Hal hit him and it began to hurt "a little bit," which he told the doctor on February 18, 2003, and was put on pain medication. He claims that he complained of pain many times between February 19, 2003, and April 29, 2003, which are unreported. He claims that he had to threaten the doctor with his job before he got an MRI, which showed the herniation, and then he could not get Nurse Wallace to schedule him for surgery. He claims that he was transferred to DOC on November 7, 2003, and four months into his sentence he had the surgery. Plaintiff takes issue with the report submitted by Paul Anderson and denies refusing treatment. He says no treatment was offered. He also claims that no witness statements were submitted with the report because these persons would attest to the problems he was having with Inmate Lewis.

      b)    <u>Florida Department of Law Enforcement papers</u>

**No. 1:04cv441-mmp/ak**

Plaintiff has provided copies of reports completed by Detective Yolanda Cox, who orchestrated the undercover drug buy that resulted in Plaintiff arrest, as well as laboratory results showing that marijuana was the substance sold.

 c) <u>Inmate Requests Forms submitted to the Jail</u>

Plaintiff has submitted three inmate requests dated August 18, 2003, November 5, 2003, and November 6, 2003, wherein he requests to be moved to another cell and is told he is where he is because he takes medication that needs to be monitored; and two requests for his medical records. [There is nothing about needing to be moved because of problems with another inmate.]

 d) <u>DOC policy</u>

Plaintiff has submitted a copy of DOC policy regarding copies of medical records and directing that inmates make such a request in writing and advising that a copying fee may be charged.

 e) <u>Medical records</u>

Plaintiff has submitted copies of Dr. Alexander's report, and the MRI taken on September 22, 2003, which are also attached to the Affidavit of Wanda Wallace.

 f) <u>Personal Notes</u>

Plaintiff has submitted notes he made after the fight, wherein he states that Lewis accused him of snitching about having marijuana and then hit him in the eye. He says EMT personnel looked at it and said he might need stitches or the nurse might put a butterfly band-aid on it, but then they got him to sign something and left without treating him further. After the fight, Lewis started spreading it around that Plaintiff was calling

**No. 1:04cv441-mmp/ak**

everyone "niggers" and started a loud ruckus with other inmates upon which Plaintiff told the sheriff that Lewis was going to have to go.  Plaintiff was moved upstairs and overheard the sheriff telling other officers that Plaintiff was not the aggressor in the fight. Plaintiff claims that he told Sheriff McCall and other officers not named as defendants two months before this incident that Lewis was a troublemaker, an instigator, and a racist and there would be problems with him if they did not ship him out.

Plaintiff also wrote that his neck was injured as a result of this fight and he began having problems with it and the staff getting his appointments met and hot water bottles heated.  The notes recite daily medication being given to him, and ongoing communications with staff and Defendant Wallace about the treatment for his neck.

    g)    <u>Letter from Plaintiff's mother</u>

Plaintiff's mother wrote "To Whom it May Concern," that she had no idea where Plaintiff was when he got arrested and worried that he might have killed himself because he was depressed, and she did not get a call from him until a week or so later.

**V.    Analysis**

    a)    <u>Failure to Protect</u>

Plaintiff was a pretrial detainee at the time of the incidents alleged in the complaint.  "Technically, a pretrial detainee is not protected by the Eighth Amendment's prohibition against cruel and unusual punishment because that amendment applies only to post-trial convicts." <u>Vinson v. Clarke County</u>, 10 F.Supp.2d 1282, 1293 (S.D. Ala. 1998), *citing* <u>Belcher v. City of Foley</u>, 30 F.3d 1390 (11th Cir.1994).  However, analysis proceeds under the Fourteenth Amendment which provides similar protection.  *See*

**No. 1:04cv441-mmp/ak**

Graham v. Connor, 490 U.S. 386, 396 n. 10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); Ancata v. Prison Health Services, Inc., 769 F.2d 700, 703 (11th Cir. 1985).  The minimum standard under the Due Process Clause is the same as the Eighth Amendment's standard for convicted prisoners.  Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994); Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11th Cir. 1985); Ludlam v. Coffee County, 993 F. Supp. 1421, 1424 (M.D. Ala. 1998).  Under the Eighth Amendment standard, the constitution "imposes upon prison officials the duty to 'provide humane conditions of confinement.'"  Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994), *quoted in* Jensen v. Clarke, 73 F.3d 808, 810 (8th Cir. 1996).  The Amendment requires officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"  Farmer, 511 U.S. at 832, 114 S. Ct. at 1976, *quoting* Hudson v. Palmer, 468 U.S. 517, 526- 527, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984).  In guaranteeing their safety, officials must "protect prisoners from violence at the hands of other prisoners."  Farmer, 511 U.S. at 833, 114 S. Ct. at 1976-1977, *citing* Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir.), *cert. denied* 488 U.S. 823 (1988).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' "  Farmer, 511 U.S. at 834, 114 S. Ct. at 1977.  "[A]llowing the beating or rape of one prisoner by another serves no 'legitimate penological objectiv[e]."  511 U.S. at 833, 114 S. Ct. at 1977, *quoting* Hudson, 468 U.S. at 548, 104 S. Ct. at 3211.

**No. 1:04cv441-mmp/ak**

To prevail on a "failure to prevent harm" claim, an inmate must make two showings. First, he must demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834, 114 S. Ct. at 1977, *citing* Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993). Second, he must show that the defendant prison official had a "culpable state of mind" in that he knew of and disregarded "an excessive risk to inmate health or safety." 511 U.S. at 834 and 837, 114 S. Ct. at 1977 and 1979. In other words, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.,* at 837, 114 S. Ct. at 1979; *see also* Jensen, 73 F.3d at 810; Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996).

Negligence, or a lack of due care under the circumstances, is insufficient to show a violation of the constitution. Davidson v. Cannon, 474 U.S. 344, 347, 106 S. Ct. 668, 671, 88 L. Ed. 2d 77 (1986). Proof of deliberate indifference is required and entails something more than negligence, but is satisfied by something less than actions undertaken with an intent to cause harm. Farmer, 511 U.S. at 835-36, 114 S. Ct. at 1978. A prison official or jailor, when faced with the knowledge of a substantial risk of serious harm to a prisoner, must take "reasonable measures to abate it" or his inaction will constitute deliberate indifference to that risk. *Id.* at 847.

Plaintiff alleges in his affidavit that he told Sheriff McCall on two different occasions that he and Lewis were going to have trouble if Lewis was not moved. McCall denies this in his affidavit. Although Plaintiff claims to have told other officers at

**No. 1:04cv441-mmp/ak**

the jail about these problems he has not named these persons either as defendants or in his statement of facts about the claim. He alludes to Defendant Hamilton as ignoring him on this issue, but he does not claim that he told her about any problems with Lewis prior to the fight, he simply alludes to information she might have had that prompted an uncorroborated conversation he alleges he had with Officer Paul Anderson wherein she allegedly said she would not have moved him for not getting along. This allegation against Hamilton clearly does not meet the standard for this type of claim since he does not even allege that he told her anything prior to the fight. Further, Plaintiff complains that witnesses to the event could corroborate his ongoing problems, but he has not made any attempt to obtain their affidavits to this effect.

    Even taking Plaintiff's allegations as true, the undersigned is of the opinion that he has failed to prove that he was subjected to conditions posing a substantial risk of serious harm or that either Sheriff McCall or Debra Hamilton were sufficiently apprised of an excessive safety risk to Plaintiff to support a finding that they had a "culpable state of mind" in that they knew of and disregarded such risk. First, Plaintiff does not allege that Lewis had threatened him or had hit him previously or even threatened to hit him in the future. He related no racially motivated or otherwise heated conversations between the two men or past history that would alert the sheriff or anyone else to a potential risk of serious harm. In his personal notes, Plaintiff relates that Lewis accused him of snitching and hit him. He does not describe an ongoing conflict with Lewis or a situation that was developing prior to this argument. He describes a one time argument that resulted in a one time blow.

**No. 1:04cv441-mmp/ak**

Second, Plaintiff claims that he told Sheriff McCall that there would be trouble with Lewis if he was not moved. Plaintiff does not identify what he meant by "trouble" nor does he describe some specific problem or prior incident involving Lewis. The two men were in a jail, where "trouble" is the general atmosphere. It is not, in the opinion of the undersigned, indifference to have ignored such a statement. It does not reflect a "culpable state of mind" for Sheriff McCall to ignore this type of non-specific information. Thus, even taking Plaintiff's allegations as true, he has failed to describe a situation of serious risk or an attitude of deliberate indifference by Sheriff McCall or anyone else to his safety needs.

  b)  <u>Deliberate Indifference to Medical Needs</u>

For a claim that a pretrial detainee was given inadequate medical treatment, analysis proceeds under the Fourteenth Amendment. *See* <u>Graham v. Connor</u>, 490 U.S. 386, 396 n. 10, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); <u>Ancata v. Prison Health Services, Inc.</u>, 769 F.2d 700, 703 (11th Cir. 1985). The minimum standard under the Due Process Clause is the same as the Eighth Amendment's standard for convicted prisoners. <u>Belcher v. City of Foley</u>, 30 F.3d 1390, 1396 (11th Cir. 1994); <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1574 (11th Cir. 1985).

In order to state a claim for relief based on denial of medical care, Plaintiff must allege acts or omissions sufficiently harmful to evidence a deliberate indifference to his <u>serious</u> medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). A prisoner's medical need may be found to be serious if the failure to treat the condition could result in significant further injury or an unnecessary infliction of pain.

**No. 1:04cv441-mmp/ak**

McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992).  Routine discomfort does not qualify as a serious medical need.  Id.  Further, when an inmate has received some medical attention or care and the dispute involves the adequacy of the care, federal courts are reluctant to second guess medical judgments and find an Eighth Amendment violation.  Harris v. Thigpen, 941 F.2d 1495, 1507 (11th Cir. 1991).

Subjective recklessness, as defined in criminal law, is the standard which must be shown for an official's actions to rise to the level of deliberate indifference.  Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994).  "[M]edical care provided [that is] so cursory as to amount to no treatment at all" may, "in the case of serious medical problems, may violate the Fourteenth Amendment."  Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11th Cir. 1985), citing Tolbert v. Eyman, 434 F.2d 625, 626 (9th Cir. 1970).

Medical claims under the Eighth Amendment have an objective and subjective component, each of which additionally is considered to encompass two subsidiary requirements.  Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000), cert. denied, 531 U.S. 1077, 121 S.Ct. 774, 147 L.Ed.2d 673 (2001).  The "objective component" of the Eighth Amendment standard requires a determination whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.  See Wilson v. Seiter, 501 U.S. 294, 303, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991).  This objective component varies with the situation and the conduct in question and is responsive to "contemporary standards of decency."  Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); see also Rhodes v. Chapman, 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981).  An objectively serious

**No. 1:04cv441-mmp/ak**

deprivation requires (1) showing an objectively "serious medical need." Estelle, 429 U.S. at 104.  A serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994).  In addition, an objectively serious deprivation requires (2) showing the response made by the defendant to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain" and not simply "negligen[ce] in diagnosi[s] or treat[ment]," or even "[m]edical malpractice" actionable under state law. Estelle, 429 U.S. at 105-06 (internal quotation marks omitted). See Taylor, 221 F.3d at 1257; see also Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003).

A serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow, at 1243, quoting Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1187 (11th Cir. 1994).

The objective medical tests show that Plaintiff had a severe herniated disk in his neck and the doctors who had examined him were of the opinion that he needed surgery.  This is obviously a serious medical need.

To show the required subjective intent to punish, Plaintiff must demonstrate that the defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105.  This is defined as requiring (1) an "aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists" and (2) the actual "draw[ing of] the inference." Farmer, 511 U.S. at 837.  In sum, in a claim of denial of medical attention under the Eighth Amendment "[u]ltimately, there are [] four

**No. 1:04cv441-mmp/ak**

requirements: an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor, 221 F.3d at 1258.

It is upon examining the response of Defendant Wallace to this need that Plaintiff's claim fails. His medical records support the Defendants' version of the facts. He did not complain about his neck or shoulder pain until several months after the fight with Lewis. He was examined two days after the altercation and did not report pain in this area, he complained about the laceration to his eye. Despite his claim that he heard his neck "pop" during the fight and had some pain right after the fight, he did not report this to the medical staff either upon examination on February 10, 2003, or during the numerous reports to staff from this date until April 29, 2003, regarding his acid reflux condition. If, as Plaintiff claims, Inmate Lewis "broke" his neck during this fight how would the medical staff have known to examine him for this when the only visible sign of injury was a small cut to the eye and Plaintiff made no complaints of neck pain until two months after the fight occurred? On June 10, 2003, Nurse Wallace writes that Plaintiff continued to complain of pain between his shoulder blades and told her at that time he believed he hurt himself during the fight in February. He had been taking medicine for pain since his first complaint about it, but when it was reported to Nurse Wallace that the medication was not working she scheduled him for a MRI, which was done on July 24, 2003. Her attempts to schedule him for an outside medical consultation began almost immediately after the results of the MRI were obtained and her explanation for why his appointments were sporadic are fully credible in that his criminal trial was

**No. 1:04cv441-mmp/ak**

ongoing. This Court is familiar with the jail policy that prohibits advising inmates of outside appointments and travel dates, and it is therefore also clear why Plaintiff was not informed of the efforts being made on his behalf to schedule his doctor's appointments or the difficulty in getting him to Tallahassee for them. However, the treatment notes and additional information supplied by Defendant Wallace in her affidavit make it clear that Plaintiff was adequately cared for by her and others at the jail, and Plaintiff has failed to state a claim for deliberate indifference to his medical needs.

      c)     <u>Slanderous Statements by Defendant McCall</u>

Plaintiff provides no details about this vague and conclusory claim, but he seems to allege that his conviction was somehow obtained as a result of actions or statements made by Sheriff McCall, which he alleges were false. As the Defendants contend and the case law provides, a claim for damages that is related to a sentence or conviction that has not yet been reversed or invalidated is not cognizable under 42 U.S.C. § 1983. <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364, 2372, 129 L. Ed. 2d 383 (1994). Plaintiff is presently in the custody of the Florida DOC as a result of the arrest by Sheriff McCall and Plaintiff's subsequent conviction on drug charges. Thus, this claim, too, must fail.

      d)     <u>Phone Calls</u>

Plaintiff does not have a constitutional right to phone privileges with his family. As the sheriff explained, Plaintiff was not allowed to call his mother for a week while an undercover drug buy was being arranged. Sheriff McCall did not want to jeopardize the

**No. 1:04cv441-mmp/ak**

undercover operation or the safety of the undercover agent. When the drug buy fell through, Plaintiff was allowed to call home. There is no merit to this claim.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment (doc. 19) be **GRANTED**, and this cause **DISMISSED** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2).

**IN CHAMBERS** at Gainesville, Florida, this *14th* day of March, 2006.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:04cv441-mmp/ak**